opportunity to welcome our newest colleagues to the court. This is their being their first opportunity to sit in the embank and we're glad to have them with us as we take this case. The guidance that I have is that both counsel for both sides have opted to exercise their prerogative to have some uninterrupted time for their argument. The clerk has given us that and the clerk has given us that. It will blink and it will tell us then that you're open for questions. By no means you have to use that. If you decide short of that, you're ready for questions, be sure to say so and I have no doubt that questions will follow. So with that, stay in the mic, answer the court's questions at that point and help us with deciding this case. All right, that said, first up is Mr. Chief Judge and may it please the court, Katie Shepard for Mr. Reyes-Contreras. The issue in this case is whether Missouri voluntary manslaughter by assisted suicide satisfies the illegal reentry guidelines force clause. Missouri has an unusual statute because it defines voluntary manslaughter to states that prohibit assisted suicide make it a separate crime. So this case falls under the guidelines force clause which sets a high bar. It requires that a statute have as an element the actual attempted or threatened use of physical force against the person of another. An element is a constituent part of a crime's legal definition. It's something the government must prove beyond a The Missouri statute doesn't satisfy the force clause because a prosecutor can establish all the elements of assisted suicide by proving that the defendant knowingly provided the means that another person used to commit suicide. For example, in the state of Missouri versus Bernard J. Howard and the state of Missouri versus Bernard A. Howard, Missouri prosecuted a husband and son who provided their terminally ill family member with orange juice mixed with sleeping medicine and a plastic bag. She used those things to commit suicide. In the state of Missouri versus Jacob Rung, Missouri prosecuted a man who entered into a suicide pact and handed his friend a gun and the friend used the gun to commit suicide. None of those defendants used violent physical force against another person in the ordinary sense of those words for two reasons. First, there isn't the necessary use of violent force. The husband hasn't used violent force against his wife because the orange juice and the plastic bag aren't his instrument at the time of the death. They're no longer under his control. Instead, they're the instrument of his wife who commits suicide. Second, there isn't the necessary use of force against another person. The suicide is self-inflicted and the suicide is an intervening act between the defendant's conduct and the result. To resolve this case narrowly based on the unusual Missouri statute, the court does not need to resolve the party's dispute about Castleman. Putting Castleman aside, using violent physical force against another person is not an element of assisted suicide. On top of that, this court's long-standing precedent has held that a statute with the result of injury alone doesn't satisfy the violent felony force clauses in the guidelines the Armed Career Criminal Act and Section 16. That precedent makes sense because the text of the force clause requires the use of violent physical force, not the causation of injury. And it is possible to cause injury without using violent physical force. Causing injury and using violent force are like a Venn diagram. There's overlap, but there's also a crescent moon of space where they don't overlap. And because the force clause is about elements and the categorical approach, the crescent moon is very important. It means that a defendant can always require proof in every single case that the defendant used violent physical force against another person. And in the crescent moon are the examples from Johnson, Castleman, and Leocal from this court's cases and from other courts' cases. For example, a squeeze of an arm that causes a bruise, drunk driving, other types of reckless driving, deliberately withholding food from a child, failing to provide proper medical care, and polluting. There's also the statute in this case where a man was prosecuted for entering into a suicide pact and handing his friend a gun, and where a man was prosecuted for providing his terminally ill wife with orange juice in a plastic bag. The violent force clauses are written in terms of elements, and elements are the absolutely indispensable parts of a crime. And so this court's precedent makes sense as a matter of logic. Because it's possible to cause injury without using violent force, the court cannot infer from a statute with causing injury alone that it requires the use of violent force. The government has asked the court to overrule a decade and a half of its settled precedent, including two en banc decisions. The court should not take that extraordinary step for three reasons. First, the text of the force clause hasn't changed. What's changed is that the residual clause is unconstitutionally vague, and what's changed is that more statutes are indivisible under Mathis. And so the government is attempting to shoehorn more statutes into the force clause. But because the text hasn't changed, neither should the court's interpretation. The second reason is the doctrine of stare decisis. In the words of the Supreme Court, stare decisis is most compelling in matters of statutory construction, because the legislature is free to rewrite the law. Stare decisis is fundamentally important to the rule of law, and adhering to predictability and respect for judicial authority. It also stops the endless cycle of litigation. The appropriate recourse for the government is with Congress or the Sentencing Commission, or in the case of the guidelines, the government is free to request an upward variance or a departure. Third, contrary to the government's argument, Castleman does not overrule the decisions related to Johnson and Leocal and the violent felony clauses. So the question is really whether Castleman implicitly overruled the court's precedent. And the answer is no, because Castleman involved misdemeanor crimes of domestic violence and the specialized common law meaning of force, not violent force. Common law force is a broad term of art that describes an element of violence. But in Johnson, the Supreme Court rejected the common law meaning of force and construed the violent felony clauses much more narrowly. Johnson defined force and violence with their ordinary meanings according to dictionary definitions, force as strength, active power and vigor, and violence as substantial, extreme and sudden, furious, severe and vehement. Because of the two different contexts, common law force versus violent force, Castleman did not implicitly overrule the court's precedent. The government seems to recognize that sometimes causing injury doesn't involve the use of violent force. In its en banc brief, it agrees with Fields, where the Eighth Circuit held that Missouri's second-degree assault is not a crime of violence. And it agrees with Middleton, where the Fourth Circuit held that South Carolina involuntary manslaughter is not a violent felony. And in its 28-J response filed last week, the government says that its point is not that all statutes with causing injury require the use of violent force, but that most do. But when it comes to elements, most isn't good enough, because by definition, an element is always a necessary component of an offense. Logically, if an injury can be caused without using violent force, then a statute with only causing injury doesn't necessarily require the use of violent force. At the very least, the court's precedent narrowly interpreting the narrowly written force clause is reasonable, and the court should adhere to that precedent under the rule of lenity. As a final point, I'd like to discuss some more decisions from other circuits. If this court were to overrule its precedent and hold that causing injury necessarily entails the use of violent force, the court would be doing nothing more than switching sides in a circuit split. Five circuits, after Castleman, have held that some statutes with I've already mentioned Fields and Middleton. In the First Circuit under Windley, Massachusetts assault and battery with a deadly weapon is not a violent felony. In the Third Circuit under Mayo, Pennsylvania aggravated assault is not a violent felony. And in Calvillo-Palacios, the Ninth Circuit recognized after Castleman that Arizona reckless endangerment and Arizona causing a child to suffer physical injury and abuse are not crimes of violence. Also, two circuits have expressly rejected the government's argument that under Castleman, causing injury necessarily entails the use of violent force. Again, the Third Circuit in Mayo and then also the Fourth Circuit in Middleton and Covington. Because using violent physical force against another person is not an element of assisted suicide, the court should reverse and remand for resentencing. I'm now ready for questions. Ms. Shepherd, is it your view that the government cannot ultimately prevail on this appeal unless we overrule either Vargas, Duran or Calderon-Pena or both? Yes, because the government's argument appears to be that because this statute has the result of a death, that means that it qualifies as using violent force. So what were the underlying facts in the Missouri manslaughter conviction here? The underlying facts were the use of a baseball bat by Mr. Reyes-Contreras to cause the death of his brother-in-law, but under the categorical approach, the court cannot consider the underlying facts. Don't you see that that's an absurd result? That is to say, looking back on this as a whole, the concept that killing another person intentionally with a baseball bat is not a crime of violence? You're asking us to perpetuate that same kind of absurdity that the majority of this court wrongly, in my view, initiated in Calderon-Pena. I don't think it's an absurd result to ignore the facts in the case because that's what the categorical approach requires. The Supreme Court has established the categorical approach as a strict and formal analysis that deals with the statute and not the underlying facts. And part of the issue is that the case don't allow the court to narrow the conviction to just the first prong of voluntary manslaughter, which matches the generic definition of voluntary manslaughter. In that case, the crime would count under the enumerated offenses of the Guidelines-Force Clause, even though— Well, why can't we— You go ahead. Go on, Indy. Why don't the documents allow us to narrow it to the first—to the first on Bachmann? Tell me a logical reason why we can't look at the indictment and conclude that this was a lesser-included offense. Because the mis hiraeus contraris did not plead guilty to the offense that was charged in the indictment. He was charged in the indictment with second-degree murder, and then he pleaded guilty to voluntary manslaughter. But we can look at what he pled guilty to. And we can determine that he pled guilty to subsection 1, not subsection 2. I don't think that's correct, because he—the indictment charges him with a different crime than the crime that he pleaded guilty to. But what was he convicted of? He was convicted of voluntary manslaughter and armed—an armed criminal action. But he was indicted—the indictment that's in the record— Why—what does it matter? We're looking at the conviction. That's always the ultimate touchstone. Right, and looking— Why don't the documents tell us what he was convicted of? Looking at the judgment of conviction, it says he was convicted of voluntary manslaughter, not second-degree murder. And the indictment talks about second-degree murder. But just— But the judgment— Is it a question of federal or state law? I'm sorry, could you say that again? Is it a question of federal or state law, what the indictment and the judgment show? I think whether the documents can be used to narrow the conviction is a question of federal law. And under Taylor, there's a demand for certainty in— But— —valuable— But it is Missouri that determines the procedures for charges in indictment and the government. And I'm not going to claim to you that I can cite you chapter and verse, but they cite several statutes that seem to me to indicate that this form of indictment and guilty plea necessarily meant that the defendant was pleading guilty to a lesser-included offense of manslaughter one. And when I mean one, I mean per-en one. Right. I think under Missouri law, a voluntary manslaughter can be a lesser-included offense of second-degree murder, but it can also be not a lesser-included offense of second-degree murder. Is that in your brief? It's not in my en banc brief, but I think it's in my original brief. Oh, that's what I don't understand. What difference does it make what the indictment says? He was vowsly convicted under Missouri law of manslaughter. Right. And we can look at the documents and determine that it was under subsection one. Under the documents, the court can't determine with certainty that it's under subsection one because the documents say that he pled guilty to voluntary manslaughter. And if you look at the voluntary manslaughter statute in Missouri, it has two subsections, one that's traditional voluntary manslaughter and one that's assisted suicide. But counsel, may I? Go ahead, Judge O'Rourke. We'll come back. Counsel, Judge Alvarez, though, was able to do this with just the judgment and knowing the statutes and how they work. She said that it would be because it was first degree, that was only subsection one. What is wrong with that analysis? That's incorrect because if you look at the Missouri statute, it doesn't establish different degrees of voluntary manslaughter. Involuntary manslaughter, for example, it's defined as first-degree involuntary manslaughter and second-degree involuntary manslaughter. But when you look at the voluntary manslaughter statute, they're all the same class of felonies. A long, long time ago, Missouri distinguished between first-degree and second-degree voluntary manslaughter, but that's no longer the case when Mr. Reyes-Contreras was convicted. And is that in your brief? That's in my original brief, but not in my en banc brief. So what is your theory of the words first degree? Is it that we should ignore those words or that you have... Do you have a theory as to how first degree somehow means the second subsection? I think that it's ambiguous because when you look at the Missouri statute, it doesn't specify... When you say it's ambiguous, I assume what you mean is there is an alternative theory. So what I'm asking is, can you read first degree to somehow mean second subsection? Or are you simply saying that the words first degree are essentially an inkblot and we should ignore it? The second. I don't think first degree allows the court to narrow to the second subsection, but first degree is ambiguous as compared to the Missouri statute itself, which does not establish degrees of voluntary manslaughter. So we should ignore the words first degree? Yes. Isn't that contrary to Shepard? I mean, I thought the whole point of Shepard is that we should look, that we're allowed to look at the plea document. And it sounds like you're asking us to ignore the plea document. I am asking the court to look at what the plea document says and what the statute says. And when you put those two together, it doesn't allow the court to determine with certainty what Mr. Reyes-Contreras was convicted of. Also, in light of the fact that he was indicted for a different crime, for second degree murder, not for... Note, I'm not even referring to the indictment here. I'm just looking at the plea document. And I think what you told me is that we should ignore the words first degree, which are in the plea document. Yes. Watch your mouth. I want to understand your argument. My argument is that connecting the conviction documents with the statute does not allow the court to narrow the offense with certainty because the Missouri statute itself doesn't establish different degrees of voluntary manslaughter. So it could have been a typo, for example, left in from the last time someone was using the document for involuntary manslaughter where Missouri has established different degrees by statute of involuntary manslaughter. And was that specifically presented to the district court? I believe that it was not specifically presented at the district court, but the objection in the district court was that the... A more general objection that the documents couldn't be used to narrow the conviction. And the district court said that you could use the documents and the statutes to narrow it to the first degree or not first degree because that's not what the statute says, but to the first subsection. And then if you look at the statute, it actually doesn't allow you to do that. There's a way under Missouri law to convict someone of involuntary manslaughter without having charged them with second degree murder. It's not always a lesser included offense. The district court painstakingly explained why, and then it was just a general objection, right? Right. Counsel, is the crime of assisted suicide a lesser included offense of second degree murder? No. In Missouri, only the first subsection of voluntary manslaughter is a lesser included crime. So given that concession, how could you read the conviction to include assisted suicide? Because it's also possible to be prosecuted in Missouri for voluntary manslaughter when it's not a lesser included offense of second degree murder. I understand that, but in response to Judge Ho's question and to mine, my understanding of what you're saying is that it could not be, that is it necessarily is not true that assisted suicide or subsection two is an included offense of the offense alleged in the indictment. That's correct, but I think that with the demand for certainty that's required under the categorical approach, this court's precedent makes sense, which establishes that if someone is indicted for one crime and pleads guilty to a different crime, the court cannot consider the indictment. And the court has carved out a narrow exception to that rule when the judgment itself references the lesser included offense. I understand, but we're obviously sitting on bonk now, and Shepard instructs us to look at both the conviction, the conviction document and the indictment. And so what I'm trying to understand is if it is true that assisted suicide cannot be included in the indictment, why can you say that we are somehow supposed to include assisted suicide in our inquiry? I think under Shepard, the court is instructed to look at the conviction documents, the indictment and the plea when they're the same crime. So if someone was indicted for second degree murder and then convicted of second degree murder, then the court could look at the indictment. But you agree that a lesser included offense for these purposes is the same crime. So for example, voluntary manslaughter is, quote, the same crime as second degree murder for these purposes, whereas assisted suicide is not. Yes, but voluntary manslaughter can also be charged as a standalone crime. It doesn't have to be. Even the first subsection of voluntary manslaughter does not have to be a lesser included offense. What is Missouri's law, would you have to amend the indictment? In other words, if you were indicted for second degree murder and then you pled guilty to assisted suicide, could the state convict you without amending the indictment? The defendant could waive indictment, possibly. But you'd have to do, you'd either have to waive indictment or. Proceed out by way of information, which is permitted under Missouri. There's no evidence that happened here. And there's no evidence that that did not happen here. The only documents in the record are an indictment for a different crime than the offense that's listed in the judgment. Counsel, a lot of the briefing, supplemental briefing is turned on Castleman. And I think in the exchange you had with Judge Smith, if you were to lose that way, it would mean we might revisit two en banc decisions. Yes. And then today, just now in oral argument, a lot of the discussion has been focused on Shepard. And it's your contention that if you were to lose because of our focus on Shepard documents, we would only be implicating some panel decisions. Yes. So with just the time left, could you talk about a third way to resolve this case? If you think it is one, which would be Moncrief, would there be the possibility that we would affirm this sentence because your client didn't meet the burden under Moncrief to show there's a realistic probability that Missouri obtains convictions instead of prosecutes as confirmed by news articles, a non-generic manner? Could you just speak to maybe the, my question is, what's the best circuit that you can point to that defines the orbit of usable evidence to know when a state prosecutes something in a non-generic way? Under Moncrief, the standard is not whether the state obtains a conviction, but whether the defendant has shown a realistic probability that the state actually prosecutes its statute. What's the best circuit that confirms that that's the Moncrief holding? Because we, I didn't think we said that in the en banc decision that we had. That is what the court said in the en banc decision, as well as that the defendant can point to his own case or other cases where state courts have in fact applied the statute to cover non-generic conduct. And in this case, I've met the burden under Castillo-Rivera because I've pointed to real life Missouri prosecutions. In the case of the Howards, a state judge ruled that the word assist in the statute was broad enough to cover the conduct of the husband who provided his wife with orange juice in a plastic bag. And then in the case of Jacob Rung, the state judge allowed that case, the voluntary manslaughter charges, to go to a jury. So there is, under the standard in Castillo-Rivera, state courts who have approved these facts  All right. All right. Thank you. You have a red light. You've reserved your rebuttal time. We'll hear from the government. Ms. Hayden. Thank you, Your Honor. The government today, first of all, would ask this court to join all other circuits in applying the reasoning in Castleman to reject the position that a crime of violence or a violent felony's use of force clause covers only offenses that require the direct application of physical force. A statute phrased in terms of causing bodily injury that requires the volitional employment of something as a device to cause physical injury requires the use of physical force. A device can include subtle or indirect acts. The government does not say that every statute that has causation without a mens rea would require the use and employment of force. It is here today to say that an intentional or knowingly use of force as a device to cause an injury does. That's what we believe in Castleman and in Johnson and also in Voisine, extending it to recklessness. Opposing counsel cites cases, one case, United States v. Fields, that talks about reckless driving. Again, the government has not agreed that certain statutes do not comply. We just are saying that the standard should always be the standard that is announced in Voisine, Castleman, and Johnson. And in Voisine, it established what is the reckless standard. Reckless standard for purposes of use of force, volitional employment of force, to have a result is you have a substantial likelihood that this result is occurring and you consciously know that when you proceed. Does every reckless driving statute in the nation qualify? The government's position would be that you would have to look at each statute and determine whether it complies with the Supreme Court cases here. It is important in applying the categorical approach that you would have to determine what is the federal definition of use of force before we can even apply the state statute. What opposing counsel is asking is that we address the state statute without even addressing what the federal question is. What is the federal definition of use of force? Before we determine whether the state offense can qualify or complies or matches the federal definition, we would need to decide what is the federal definition. And that's what we're here to do today. What opposing counsel is doing, and Reyes-Contreras, is we're bypassing the federal definition to get straight to whether news articles can qualify to determine whether a state, there's a reasonable probability that the state would apply the assisted suicide statute in an overbroad way, but to know whether it's overbroad, we have to know what the federal definition is. As stated in the government's brief, this Court is an outlier on a very important question, and that is another important reason today to determine how Castleman should apply. And all other circuits have applied Castleman, whether they applied the indirect use of force before Castleman, they still today, quote, and cite Castleman. So the other circuits are unanimous in the application of Castleman outside of the misdemeanor crime of domestic violence, and they've extended it to ACCA, they've extended it to the sentencing guidelines, and they've extended it to other statutes in the United States Code. And the reason being is that it all starts with Johnson. Johnson defined what is physical force. It applied the ordinary meaning of physical to mean force that is exerted in and between concrete bodies. It then applied force, and it determined that the common law definition should not apply with regards to violent felony. So it applied what would normally apply in a violent felony context, and it stated, it did look at dictionary meanings to determine what should violent force mean. But in the end, it did state that the definition of violent force is force, physical force, capable of causing physical injury or pain. It stated it twice in its decision. And then from there, Castleman, it left open in Johnson whether misdemeanor crimes of domestic violence should include the common law definition of force or whether it should include Johnson's. And it left open that question. And from there, after Johnson, there was a split in the circuits, and the circuits were in disagreement whether the misdemeanor crime of domestic violence should have or apply the Johnson definition or whether it should apply something along the common law definition. So that's what Castleman addressed. It wanted to resolve the split with regards to what does, what degree of force should be required for misdemeanor crime of domestic violence. But it also addressed the district court's decision in Castleman's, which was the district court decided Castleman's case not on the degree of force but on whether the direct application of force was applied. And because the Tennessee statute that applied in Castleman used the language intentionally and knowingly causing injury, it said because that statute worded the way it is, it does not require a direct application of force, then therefore it doesn't have the use of force as an element. Well, the Castleman court also addressed that aspect. And it stated, it used the ordinary meaning of use. And it said what is the ordinary meaning of use? It's the volitional employment of something as a device to cause a result. And in applying the ordinary meaning of use, it used examples, examples that are not indicative necessarily of a misdemeanor, but examples that are indicative of serious crimes such as murder, aggravated assault, or manslaughter. It used examples of poisoning someone. It used examples of infecting someone with an infectious disease. Shooting with a gun was even an example of an indirect application of force because you could pull a trigger without touching the victim. The bullet would be the physical force instead of the finger pulling the trigger. So it showed that when you get down to it using a common sense reasoning, what is the application of use of force can apply both indirect and direct because really it is the volitional act of setting something in a motion to cause a result. You have the same evil intent. You're no more violent in slowly causing someone to die of poisoning or starvation than you are of beating someone in the chest with a fist. And that was the point that the Castleman court made, and that is why all the other circuits have applied its reasoning beyond a misdemeanor crime of domestic violence. And then Boisin again reaffirmed Castleman and Boisin when it again applied the ordinary use of force, quoting Castleman, citing Castleman, saying it is simply the volitional employment of force as a device. And then it went further to say, what is volitional? Well, volitional can also include recklessness. And from there, we have many cases that have talked about Castleman, why it should not be cabined to crimes of misdemeanor, misdemeanor crimes of domestic violence. And Castleman instructs there's no distinction between offenses focused on result and focused on the means to commit that result. Boisin and Castleman undercut Vargas Duran's and Villegas Hernandez's holdings that volitional causation of bodily injury does not entail force. And in fact, in Castleman, Scalia, Justice Scalia, who wrote the majority opinion in Johnson, reiterated again, what is violent force? Violent force is the force that is necessary to cause, the force that is capable of causing physical injury or pain. And he said, and again, reiterating what that definition, Johnson definition is, he said, it is impossible to cause physical force, I mean, I'm sorry, it is impossible to cause bodily injury without using the force capable of causing bodily injury. One entails the other. And in fact, in DiMaia, the Supreme Court recently reiterated again, it is impossible to cause, knowingly, volitionally, cause bodily injury without using the force that is necessary to reach that result of causing bodily injury. So that reasoning that started, and again, it started, and then we have Leocal where it was negligent, accidental conduct. And so the phrase that causing bodily injury does not necessarily entail force can apply in those Leocal circumstances. So that statement is not entirely wrong. But when we're talking about volitional conduct, in applying Johnson in Castleman and Boise, it is. And that's why the government is here today to ask the court to change that position in line of these cases and in line of the circuit cases. And the Fourth Circuit in Reed stated, Johnson's clear definition of physical force, what happens when we require that the force clause only apply to direct acts is what we do is we graft from Johnson's clear definition of physical force and we graft onto it a requirement that indirect force cannot be used. Or that direct force be used and exclude indirect force. There was nowhere in the definition in Johnson, Castleman, or any of the other cases have they made a distinction between direct and indirect force and said that violent force can only include direct force and it excludes all acts of indirect force. In fact, Castleman shows us otherwise. And also, Castleman's analysis, as Judge Jones mentioned in her concurring opinion in the panel decision, did not rest on the distinction regarding the degree of force. The analysis was in another context. And there are several other circuit courts that agree with this that are cited in the government's brief. It is important because in this case, when we talk about the force clause, the force clause applies not only in the guidelines, but it applies in various statutes. A lot of them are named in the government's brief. Identical or very similar language. And so it's not just a matter of 201.2. This court's precedent with regards to addressing the federal definition of the force clause impacts many cases. And in fact, many cases right now are waiting on this case today to determine how this court is going to rule on what is the federal definition of force. And again, the Fifth Circuit is an outlier. And in doing so, in the policy considerations for avoiding a circuit split is, according to this court and Willer v. Pilgrim's Pride, as we look at other circuits as persuasive  And in this case, they both weigh on the favor of changing precedent to determine that indirect force qualifies for use of force provision just like a direct force does. The cases that Reyes-Contreras has cited, Middleton, again, that has to do with the use of force as an instrument. And in that case, you had a person who was selling alcohol to minors outside of his home. He sells alcohol to a minor, and then that minor goes to another minor down the road and gives that minor alcohol who the third minor is then involved in a crash, a fatal crash. The Fourth Circuit in that case found that the causation between selling the alcohol and the actual death were too attenuated. And in evaluating the use of force, the selling of alcohol was not used with a knowing, intentional, or reckless repurpose to cause death. So there's going to be other cases that are going to be, when we look at the state cases, we're going to have to look at how the state applies the statute in every case. But we first look at the federal definition. As Judge Jones said earlier, every state may not comply with a federal definition, but it's the federal definition that drives how that use of force provision should apply. And when we talk about whether this particular statute in the state of Missouri, whether there's a realistic probability that Missouri would apply the statute in an overbroad way, the reality is that there is no state conviction in Missouri that is for assisted suicide. That's why we don't have any cases, case law, or a legal precedent to look at how they evaluate the statute, how they analyze the statute. And there is a case, CIR v. Bosh's Estate, 387 U.S. 456. And it says when construing a state statute, the court can look to intermediate appellate courts to determine how the state's highest court will rule. And that's why when we go to Castillo-Rivera, the en banc decision there, the case law requirement was very important. Because when we're looking at enhancements, like we are here, we are looking at how a state construes its statutes for purposes of convictions that will be used as enhancements. Here, in this case, we have no convictions because no one in the state of Missouri has been convicted of assisted suicide. And I believe the other side concedes that. There's one opinion that they were able to cite in their original panel brief, which was that there was a force caused to the death by administering overdose of drugs, which would clearly qualify under Castleman's example of poisoning someone. Except for this, this would be overdosing someone. By the utility or the employment of force would be giving your patient or giving someone an overdose of drugs with the knowledge that death would certainly result. And that's what would happen. And that is the volitional use of physical force as a tool to create a result. And news articles are a very unreliable source when we look at media today. We don't know always what is exactly true and what is not. And that's why at least we should be looking at a precedential decision to determine how to apply the statute and what do the elements mean in that statute. And with that, I'm open to questions. Ms. Hayden, just picking up on your discussion of the Howard case, and I'm thinking specifically about Judge Higginson's question to your opposing counsel. Is it your position that in order to demonstrate that a state prosecutes a crime beyond the generic definition, that you need a conviction? Is that your position under our case law and under the Supreme Court case law? Yes, Your Honor, it is my position. And I believe we cited not only Castillo-Rivera, but also Carrasco-Tercero, where they did not have a—they noted the same thing. There's no conviction. They failed to cite a single case where the court convicted a defendant based on the theory. Great. So that's your position. Let's assume you're wrong about that, just for the sake of argument. I'm looking at the indictment, the complaint that they attached, the other side attached to their reply brief, their reply en banc brief. And that has to do with someone providing, I assume an elderly woman or someone who is sick, with food that—in which narcotics had been—or sleeping powder had been put and providing her with a bag and a rubber band to commit suicide. What is your position on whether those facts—how are those facts covered by the Castleman use of force? Does that meet the Castleman standard for use of force, even if it's indirect, or not? In my opinion, it does, and this is why. Even though it's not sufficient to qualify as a standard, I would—with regards to that, I believe that if you look at the husband knowingly put narcotics and food, knowingly put sleeping pills and orange juice, and along with alcohol, his—it appears, from what you can read from the information that is provided, is that his wife was—she could not—she was not able to move. So she was—they were having to bring everything to her. So they placed everything so that she could reach it, read instructions on how to commit the self-murder, brought her a plastic bag to put over her head, brought her bands to—rubber bands so that it would be affixed over her head, and did all of that. She would not have been able to commit her self-murder, my position would be, without their assistance, and their assistance was knowingly using these items as the use of—to cause the actual result of her death. And so that would qualify under Castleman and the definition of volitionally using force to reach an assault. I mean, implicit in your answer, if I'm hearing what you're saying, is there's a causation element that we would have to consider. You know, there has to be a chain of circumstances that is so remote that the person who employs the—that uses the force couldn't be found to have actually caused the injury. I mean, is that right? That's correct. And it also goes to the mens rea. If something occurs that's totally outside the mens rea, you're not using that instrument for the purpose of creating that result. The fact that that result occurred, but not as a result of your mens rea, like, for example, the person selling alcohol, he didn't sell alcohol for the purpose of—or even with knowing that there was a substantial likelihood that someone else that he never met before was going to die in a fatal accident hours later. So it really also goes to the mens rea that's covered by the use of the volitional—the volitional use. What if you were to take the model—that's over here—the model penal code that allows duress or deceit to be aides to assisted suicide, and you had a middle school girl and she got a bullying, just do it email. Is that going to have to be analyzed under the particular facts as to whether or not that's the causation? Or how do you handle that situation? Or we don't have to decide that today? I know those are difficult questions, and that's why this is a unique case, because we do have a statute that has that in there. And that's why you look at how—has that—has the state of Missouri ever had a conviction under this provision of voluntary manslaughter? And the answer is no, for reasons like you say. There's either going to be jury nullification, or it's going to be a judge dismisses it, a grand jury no-bills it. It never reaches to appellate level for it to be analyzed because it hasn't been used that way, and it hasn't been—no one's been convicted under that provision of the  So that would take care of, I think, some situations like what you're talking about. If we were to adopt the government's view of force, other than Rico Mejia, what other cases would we need to overrule from the Fifth Circuit? Post-Castleman, I mean, we did talk about Vargas Duran and Calderon-Pena in that, you know, Rico Mejia, the position in that case was that those cases didn't directly overrule Vargas Duran and Calderon-Pena. I believe that, you know, post-Castleman, that it does somewhat undermine it. So it probably would have to look at the Calderon-Pena and Vargas Duran. And again, like I said, Vargas Duran wasn't entirely wrong. The only thing about Vargas Duran was that it required intentional, and now the intentional use of force, it's not limited to intentional. It can also include knowingly and recklessly. What about Villegas-Hernandez? Definitely Villegas-Hernandez as well, Your Honor, because that's a statute, an assault statute, that's based on knowingly causing bodily injury to another. And that comes up a lot. I'm sorry. Excuse me. Texas crime of intoxication assault requires a prosecutor prove the defendant, one, by accident or mistake, two, while operating a motor vehicle in a public place while intoxicated, three, caused a serious bodily injury. I'm a little confused by what you've been saying. That is the statute at issue in Vargas Duran. Post-Castleman, do you think that the en banc decision there was correct or incorrect? I believe it was correct in that it was, as far as accidental conduct is still not covered. Leocal covers that part. So anything that's negligent or accidental would still fall outside of the knowingly, intentionally, or recklessly using physical force. And then what's the status of Calderon child endangerment? I believe that it does overrule Calderon-Pena in that Calderon-Pena did indicate that direct use of force could only involve direct physical contact and no other types of indirect force, such as the types that were used in Judge Smith's dissent in Calderon-Pena. So the case of locking the child in the closet and starving the child, you say that is a use—well, take it away from that. Just starving the child. What use of force is under Castleman is involved in that? And again, each statute we're going to have to—the court would have to determine, you know, whether it does fall under that. But my position would be—and the circuit courts have already addressed this. First of all, if it's not negligent or accidental and it's knowingly starving a child to death, there are several circuits that have held. There's one right now that was cited in the 28-J letter, Mayo, Third Circuit. But that's not the final decision in the Third Circuit where they suggested that omission would not be a use of physical force. But the en banc court is going to decide that in October. There's three other circuits that have found that omission is a use of force. And the reason being is that in those situations, there's usually a duty to act. When you see it, it's either going to be a child who relies on the parent for life-sustaining food, and the parent usually prevents that child from getting food. So it's the act of preventing a child from being able to get the food that it needs by your control over that child. Jennings being one of them. It's cited in the government's brief. Peoples is the Eighth Circuit. Ontiveros, the Tenth Circuit. All of them required a duty. It can't just be a good Samaritan failing to act. It would be someone—if you're a doctor-patient and the patient cannot do anything on its own, it relies on the doctor to do it. The doctor's act, knowingly and intentionally, committing the act of omission, whether it be not providing the life-saving medicine, those types of things, is an act within itself with the desire that a result occur. Those three cases are good examples. Getting back to the construction of the Missouri statute, that issue was thoroughly briefed to the panel, so it's legitimately here before us and it's been discussed here already. And in those initial briefs, the defendant seemed to suggest that the government would have a lot of trouble with Bonilla. The question here is, should Bonilla be considered by us in terms of whether it was wrongly constructed, or should we provide any sort of an obstacle on the question of construing the statute? Your Honor, I'm not—are we talking about the voluntary manslaughter statute? That's right. I don't recall Bonilla having any case that would be difficult. I do recall a case being difficult with the ACCA, the armed— I'm just reading from the—Mr. Reyes-Contreras' initial brief to the panel, and they suggest that Bonilla is inconsistent with your position on that. Was it pre-Castleman? I'd have to go back and look. If it was pre-Castleman, then everything has changed since Castleman with regards to the other circuits. And even in this circuit today, we're asking for whatever precedent that may have relied on the indirect acts or things like that, we're asking the court to change that view. And it wouldn't be surprising if there are previous cases that might have applied that. I mean, your brief to the panel cited Bonilla in a couple of places, and I'm just curious, and I don't—it seems to me that you're not giving us an adequate answer as to whether Bonilla is rightly decided or not. Your Honor, I'd have to go back and look at Bonilla, to be honest with you. I'd have to see whether—I can't—if it's not for assisted murder, there was—like voluntary manslaughter under the section— Bonilla is about narrowing the indictment. I'm sorry? It's about narrowing the indictment. Oh, okay. That's—I'm sorry. Ten minutes we spent with your opposing counsel talking about that. I have the answer. We're trying to understand your response to that. Okay. Now, I apologize. I think in our case, what makes our case unusual is that the actual judgment shows that he was not involved in a voluntary manslaughter, but ACCA. ACCA incorporated the second-degree murder. So if you look at the judgment itself, this is the government's position. I know that there's other cases like Turner and Bonilla and other cases that say if the indictment states an offense that is different than the judgment, that you can't refer to the indictment unless the judgment states that he's pleading to a lesser-included offense. The judgment in this case did not say that the defendant was pleading to a lesser-included offense. So therefore, the panel held under other precedent, including United States v. Turner and Bonilla, that it was—it was limited to—you know, it was restrained from that other precedent to not be able to consider the judgment by itself and that we could not include the indictment. Our position is that the judgment also refers to the second count in the indictment, which is ACCA, which is, you know, armed career action where he used a dangerous weapon in the course of committing second-degree murder. So it's clear that he had to commit second-degree murder, and the only lesser-included offense of second-degree murder is the first subsection of voluntary manslaughter, which is actually committing second-degree murder, but you have the defense of saying that you did it under sudden passion raised by adequate cause. It's really a defense. It's not even an element. JUSTICE SOTOMAYOR. Are you trying to say that in the ordinary case, Shepard would allow us to go to Missouri law and charging policies and so on to look at the guilty plea as well as the indictment or information or jury, and would allow us to look at all those documents, or are you just saying that in this particular case, you go to count two and the answer is unequivocal? Are you arguing for the broader proposition or the narrower practice? MS. SOTOMAYOR. In other words, Shepard, you're saying Shepard, if our law says we can only look at the guilty plea if it's inconsistent with the indictment, you're saying you would say we are, generally speaking, correct or not correct? MS. WARREN. I think it's a little bit restrictive. I don't know if Shepard completely has drawn the limitations that this Court has with regards  JUSTICE SOTOMAYOR. That's my point. Does Shepard require us to look only at the guilty plea if inconsistent with the indictment, or can we go through a broader exercise looking at charging practices and so on? MS. WARREN. I believe you can go through a broader practice. I don't think Shepard is quite as restrictive as some of the previous cases in this circuit that have held when someone pleads and the judgment reflects a different offense than the indictment. If there's other reasonable and credible things that you can look at in the record, like in this case, it was clear that the only crime he could have pled to would have been the generic voluntary manslaughter. In fact, he pled to ACCA, which incorporated the second-degree murder. Is this— JUSTICE BREYER. Do you know if other circuits have wrestled with this, when there's a guilty plea to offense other than the charged, whether you can look back because there's other inferential reasoning? MS. WARREN. I can imagine they're probably struggling with the same thing, trying—all the courts have been struggling with the categorical approach ever since Taylor. And even now, judges are wrestling with it. So I know it's not an easy thing to know what documents can be considered under what circumstances. So I've seen other courts where they do struggle with trying to figure out what is categorical and what does a modified categorical approach allow us to do as a court in determining what parts of a subsection of an offense the defendant pled to. To the extent that we would be constricted by Bonilla or Turner, are you asking us to overrule those provisions of those cases or not? MS. WARREN. Your Honor, you know, each case was kind of based on different things, but the general rule was is that you can't look at the indictment, if you please, to a lesser included offense. And I believe that there may have been one case that had an exception, and that exception was that the judgment had the fact that it was a lesser included offense. I think that's restrictive. What type of rule would we ask the court to apply? Something, if there's reasonable information from the standard Shepard documents that can be used, which are usually the indictment, the plea agreement, the judgment, and certain credible court documents, that those should be able to be used to narrow it. JUDGE LAKE And you're arguing that because you think the statute is divisible, the Missouri statute? MS. WARREN. I do, Your Honor. I believe the panel agreed with us on that. They're totally separate types of committing voluntary manslaughter. One that does not overlap with the other. JUDGE LAKE All right.  Thank you. MS. WARREN. Thank you, Your Honors. JUDGE LAKE All right. Ms. Shepard, you've reserved your vote of time. You're up and open to questions. MS. SHEPARD. I'd like to begin by mentioning that the government didn't ever ask this court to revisit its precedent in Bonilla and Turner. And so to the extent it wasn't briefed on Bonk, the government didn't ask the court to revisit that precedent. JUDGE LAKE And they actually have not asked us to revisit Vargas Duran or Calderon-Pena. It's very curious the way the government carefully wrote its brief to ask us only to overrule Rico Mejia. I don't understand that, but that's what they've done in their briefing. MS. SHEPARD. Correct. JUDGE LAKE And I assume it's not accidental. MS. SHEPARD. I don't want the court to overrule Villegas-Hernandez, but as I pointed out in my reply, Texas aggravated assault can be committed by reckless driving. So I believe under the government's rule where fields is the correct result of reckless driving not counting as a crime of violence, the Texas assault also does not count as a crime of violence. The government relies— JUDGE LAKE I agree that since we're construing statutes, we're not really bound by how the government sees it or how you see it. We just have to construe the statutes correctly under the Supreme Court precedent, right? MS. SHEPARD. Yes, and I think under— JUDGE LAKE And if that leads us someplace that the government didn't argue, then that's where we should go, right? MS. SHEPARD. Correct, but I can only make the arguments that are in response to what the government has argued. JUDGE LAKE I understand that now. I get that, but I just wanted to clarify. MS. SHEPARD. And I think going back to the text of the force clause, it requires a statute to have as an element the use of physical force against another person, and the Supreme Court has interpreted that in Leocallin and Johnson. Ms. Shepard, on that point, in the Howard case that you brought up at the beginning of your argument, the Howard case from Missouri, why aren't the facts in the complaint that you attached to your reply brief essentially the Castleman poisoning scenario, a variation on the Castleman poisoning scenario, but a scenario that the Supreme Court has told us is a use of force against another? MS. SHEPARD. The difference between the Castleman case and the Castleman poisoning example is the act of the suicide. I don't think that was what Castleman had in mind with poisoning someone. JUDGE LAKE Did you speak in the microphone? MR. CASEY. Speak up a little bit. MS. SHEPARD. I apologize. I don't, you know, the poisoning example I think is someone directly poisoning someone in the sense where they give the person poison. JUDGE LAKE This is, I'm reading from the complaint. I mixed sleeping narcotics with a food substance and gave it to a woman who used it to kill herself. That sounds like Castleman to me. What's the difference? MS. SHEPARD. It's poisoning someone against their will. And with the example of assisted suicide, it's providing poison into someone who then uses it to commit self-murder, which is not a crime of violence because self-murder doesn't have the use of force against another person. So in the assisted suicide case, there's the intervening step of the suicide. JUDGE LAKE Okay.  That's the difference? MS. SHEPARD. Yes, and took an act to take their own life that makes the causation more intense. JUDGE LAKE But in the complaint, the person who provided them the instrument to do so wanted them to do that and wanted to help them do that. MS. SHEPARD. They knew that the person wanted to commit suicide and they made it possible for the person to use those things to take their own life, yes. JUDGE LAKE What if the defendant held the glass to the lips of the woman who couldn't move and she drank it knowing it was poison but held the glass? Would that be use of force in your view? Against another person?  SHEPARD. I think that would qualify as murder and then that's enumerated under the guidelines. JUDGE LAKE But she's consenting, why not assisted self-murder? MS. SHEPARD. I think if you knowingly cause someone's death in that way, it would qualify as murder. JUDGE LAKE So the difference is handing the glass and the person drinking it versus putting it to the lips, that's the difference? MS. SHEPARD. Yes, and there weren't any Missouri cases where someone, you know, did the example in your case. The cases involved the intervening step of someone picking up the things themselves and using that to commit suicide. And then I also discussed the user's instrument theory in Castleman where it's not the instrument of the person who assists the suicide, it's the instrument of the person who commits suicide. And as far as Johnson, the line in Johnson about physical force being capable of causing pain or injury is not Johnson's exclusive definition. Johnson also used dictionary definitions that I explained in my opening about violence meaning furious and vehement and severe and extreme. And if that were Johnson's exclusive definition, then Johnson itself and LAOCAL would both be wrongly decided because an offensive touching is clearly capable of causing pain or injury, like a squeeze of an arm that causes a bruise. And drunk driving is also obviously capable of causing pain or injury. And as far as relying on the concurrence in Castleman, the majority in Castleman expressly rejected Justice Scalia's view. All right. You had a question? Do you agree with the government that from your research, there is no, there's no, we have no confidence that Missouri has ever obtained a conviction for assisted suicide? I didn't find any cases with the conviction, but I don't think that's what's required under Castillo-Rivera. And under the government's argument, I think that would require the court to have trial courts, which the court should not do. That is still prosecutions in Missouri. All right. Thank you. That concludes the oral argument in the case. Thank you for counsel, both sides for your briefing and argument. The case will be submitted. We stand in recess.